# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Garfield Gayle t/d/b/a :
Gar's Automotive O.I.S. #EF48 :
 :
   v. : No. 1740 C.D. 2016
 : Submitted: October 6, 2017
Commonwealth of Pennsylvania, :
Department of Transportation, :
Bureau of Motor Vehicles, :
    Appellant :


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
    HONORABLE P. KEVIN BROBSON, Judge
    HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI   FILED: November 1, 2017


   The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles (PennDOT) appeals from an order of the Court of Common Pleas of Delaware County (trial court) sustaining Garfield Gayle's (Gayle), t/d/b/a Gar's Automotive O.I.S. #EF48 (Station), appeal from PennDOT permanently suspending its certificate of appointment as an official emission inspection station and imposing a $5,000.00 fine.

**I.**

On December 29, 2015, PennDOT issued an Order of Fine and Suspension of Official Emission Inspection Station (Suspension Order) to the Station, providing, in pertinent part:

> You are hereby notified that your Certificate of Appointment as an Official Emission Inspection Station is suspended, pursuant to Section 4724 of the Vehicle Code. [75 Pa.C.S. § 4724.] No vehicle emission inspections may be performed during the suspension. Pursuant to Departmental regulations, your Certificate of Appointment is suspended permanently and [a] $5,000.00 fine [is imposed] for furnish, lend, give, sell or receive a certificate of emission inspection without inspection (35 vehicles were issued emission stickers without conducting an emission test, sticker numbers IM50651553-IM50651588).
>
> The suspension(s) will run consecutively, for a total suspension of permanent and $5,000.00 fine. This suspension will run consecutively with any other suspension(s) imposed by the Department for any violation considered separately.

(Reproduced Record (R.R.) at 8a.) On January 28, 2016, the Station appealed the Suspension Order and the trial court granted its request for a supersedeas during the pendency of the appeal.

At a *de novo* hearing before the trial court, David Wolpert (QAO Wolpert), a PennDOT quality assurance officer, testified that he performed a routine audit of the Station on November 6, 2014, during which he discovered 36 emissions stickers were missing. He determined that they were missing because

2

Gayle, the owner and operator of the Station, was unable to produce the stickers and could not show from the Station Use Sticker Report (Report) printed out from the Station's emissions analyzer that the stickers had been affixed to vehicles after an emissions test. QAO Wolpert "explained" that the vehicle emissions test

> shows the emission stickers that [Gayle] has issued to several vehicles. And I compared these sticker numbers to the number of stickers that he has purchased through [PennDOT]. On the back side, the second side of this report[,] it goes through the, like I said, the number of stickers he has used and I actually physically wrote this on the report saying that he was missing these series of sticker numbers, IM50651553 to 588[,] which is a series of 36 stickers that were not in the analyzer and that he could not produce as being used.

(R.R. at 28a-29a.) QAO Wolpert went on to explain that if the Station properly conducted its emissions tests, it would have logged each of the stickers into the emissions analyzer when the vehicle was tested, and failure to input vehicle information into the analyzer constitutes improper testing of a vehicle.

The Report was entered into evidence and lists all issued stickers in their numerical and chronological order, with IM50651552 being the last. Conspicuously, the Report provides that the Station issued IM50651552 on November 5, 2014 – the day before the routine audit.

QAO Wolpert testified that after the routine audit, he and Gayle had a conversation about the missing sticker reports, during which Gayle answered two questionnaires. He claimed that during that time, Gayle admitted to fraudulently

3

issuing and affixing stickers to vehicles without running proper emissions tests. According to QAO Wolpert, Gayle also never stated that the analyzer was malfunctioning.

QAO Wolpert testified that PennDOT then held an informal hearing, which both he and Gayle attended. At the hearing, Gayle testified about the broken analyzer, which QAO Wolpert acknowledged. Notwithstanding, QAO Wolpert testified that he never returned to the Station to test the analyzer.

Following QAO Wolpert's testimony, Gayle testified that he did not admit to fraudulently issuing emissions stickers to vehicles, but rather, he told QAO Wolpert that the emissions analyzer had been malfunctioning. For this reason, he had the analyzer serviced for repair on November 3, 2014, which was three days prior to the routine audit. He also renounced the answers provided in both questionnaires because they were filled out by QAO Wolpert on his tablet and Gayle signed them without ever being provided an opportunity to review them. Gayle testified that following the audit, he printed out vehicle emission inspection reports (VIRs) for five of the missing stickers, which he submitted into evidence.

Significantly, Gayle submitted into evidence the VIR for IM50651554 – numerically, the second sticker alleged to be missing – which had a "Test Date/Time: 11/06/2014 @ 13:06." (R.R. at 116a.) Because the time-stamp for all of the provided VIRs took place after the audit, there was confusion and conflicting testimony as to whether those annotations reflected the time of the emissions test or the time they were printed.

Notwithstanding Gayle introducing several VIRs, 31 of the stickers remained unaccounted for according to PennDOT. To this, Gayle offered the following explanation:

> Q: Now during the time that your machine was down would you tell Her Honor what some of the readings would be and what you would have to do with your customer?
>
> A: The customer would come in for an inspection. I would plug the machine up and the interface would say no communication. However, it will still run the test. And at times it would come -- it would time out and the customer -- it would give me the opportunity to input a number and sometimes it would just time out. . . .
>
> * * *
>
> Q: So when Mr. Walker testified that when the wireless vehicle interface is malfunctioning that you may see other readings on the screen. What are some of those if you remember?
>
> A: Basically it will -- it won't allow you to issue a sticker number. It will just go through the test and it will time out or it will -- you have to keep trying at getting it to communicate.
>
> Q: And once you did that did there come a point at some point where you issued the sticker?
>
> A: Yes, I did.
>
> Q: And what happened that caused you to issue the sticker?
>
> A: I mean I did not know whether the vehicle passed or not per the machine's outcome or --
>
> Q: Right.

A: -- the whole outcome of the test. So you know, I just proceeded, you know, and continued working and, you know, keep the shop going.

Q: Now when a car's being inspected and there is an actual problem would you as a mechanic see and repair that problem even if the machine didn't say that it had to be repaired on the emissions or on the inspections?

A: Yes.

Q: Right. So if something was wrong you would require the person to fix it?

A: Yes.

(R.R. at 71a, 72a-73a.) On cross-examination, he further explained:

Q: Now those 36 vehicles that you affixed the stickers to that would mean that they passed the emission test, correct?

A: Yes.

Q: So did you list them as passed in the system, the analyzer?

A: The analyzer did not allow me to because it was malfunctioning.

Q: So they did not pass the test?

A: Not all of them.

Q: But you still gave them stickers?

A: Yes.

(R.R. at 80a.)

6

At the hearing's conclusion, the trial court sustained the Station's appeal and rescinded the suspension. As pertinent, the trial court found Gayle's testimony credible about the intermittent malfunctioning and subsequent repair of the Station's emission analyzer. The trial court also found that "it was unsure as to what happened with the [emission analyzer] based upon its review of the [a]nalyzer's reports before and after Mr. Wolpert inspected [it] on November 6, 2014." (R.R. at 144a.) Noting that the last accounted-for sticker was issued a day before the audit and that Gayle printed the VIR for the first missing ticket – IM50651554 – at 1:06 p.m. on the same day as the audit, the trial court further concluded:

> Due to the failure of adequate explanation as to how the Analyzer functions, the Trial Court is unable to understand how PennDOT can ask for a sticker report before it was used. Therefore, the Trial Court does not know how Mr. Gayle could produce these alleged missing sticker number reports for emissions that have yet to have been performed.

> \* \* \*

> As the Trial Court stated at the conclusion of the hearing in this matter, it is unclear what happened based upon the aforementioned evidence and lack thereof. The Trial Court cannot speculate to render a decision. It would be improper for the Trial Court to find against Mr. Gayle when PennDOT failed to meet its burden of proof. Therefore, sustaining the appeal was the only proper alternative.

7

(R.R. at 142a, 143a.)  This appeal by PennDOT followed.[1]

## II.

On appeal, PennDOT contends that the trial court erred when sustaining the Station's objection to the Suspension Order because, regardless of certain ambiguities contained in the record, Gayle admitted that he issued some of the stickers without conducting a proper emissions inspection.

Section 4724(a) of the Vehicle Code provides:

> **(a) General rule.--**The department shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station or may impose a monetary penalty or may issue a warning against the station, which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the department.  A schedule of all penalties, points and suspension may be established by the department by publishing a notice in the Pennsylvania Bulletin until the regulations governing these penalties are promulgated by the department.  The department shall maintain a list of all stations holding certificates of appointment and of those whose certificates of appointment have been suspended.  Any suspended certificate of appointment and all unused certificates of inspection shall be returned immediately to the department.

---

[1] Our scope of review is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence.  *McCarthy v. Department of Transportation*, 7 A.3d 346, 350 (Pa. Cmwlth. 2010).

8

75 Pa.C.S. § 4724(a). 67 Pa. Code § 177.427(3) provides that a person may not "Furnish, loan, give or sell certificates of emission inspection and approval to any official emission inspection station or other person except upon an emission inspection performed in accordance with this chapter." 67 Pa. Code § 177.427(3). As pertinent, for recordkeeping to be "fraudulent," it must be:

> *Fraudulent recordkeeping*-- A recordkeeping entry not in accordance with fact, truth **or required procedure** that falsifies or conceals one or more of the following:
>
> (i) That a certificate of inspection was **issued without compliance with the required inspection procedure**.

67 Pa. Code § 177.601 (emphases added). The penalty for a second offense of furnishing, lending, giving, selling or receiving a certificate of emission inspection without an inspection[2] is a permanent suspension and a $5,000.00 fine. *See* 67 Pa. Code § 177.602(a). When violations of the Vehicle Code and its regulations are alleged, PennDOT bears the burden of proving those violations occurred by a preponderance of the evidence. *Tropeck v. Department of Transportation, Bureau of Motor Vehicles*, 847 A.2d 208, 212 (Pa. Cmwlth. 2004).

---

[2] During the hearing, PennDOT entered into evidence a settlement agreement between PennDOT and the Station, whereby the Station "consent[ed] to [PennDOT's] assessment for violations of furnish, lend, give, sell, or receive a certificate of emission inspection without inspection and fraudulent record keeping . . . . I accept that [PennDOT] has imposed two 1-year suspensions for these violations to run concurrently effective March 20th, 2013." (R.R. at 94a-95a.) While it was disputed whether that settlement constituted a first offense, the trial court did not reach this issue because of the manner in which it disposed of the case.

While Gayle plainly admitted at the *de novo* hearing that he issued stickers without properly conducting an inspection, what complicates this matter is that his admissions may not apply to the missing stickers in question. As the trial court reasoned, this is because the last sticker listed in the Report occurred the day before the audit, and the VIR for the second missing sticker demonstrates that its inspection occurred **after** the audit. Because both the Report and VIRs indicate that the Station issued emission stickers in numerical order, and because the second-lowest sticker missing was issued after the audit, the trial court was left to speculate "how Mr. Gayle could produce sticker reports for emission testing that has not occurred." (R.R. at 143a.) Simply put, while the Station may have been culpable for something, that does not absolve PennDOT of its burden of proving the specific violations alleged.

Accordingly, because substantial evidence supports the trial court's determination that PennDOT failed to demonstrate by a preponderance of the evidence that the missing stickers were affixed to vehicles without a proper inspection, the trial court's order is affirmed.[3]

_____
DAN PELLEGRINI, Senior Judge

---

[3] In its brief, PennDOT contends that the prior settlement agreement between PennDOT and the Station proves that it committed a prior furnishing violation. However, PennDOT failed to raise this issue in its Concise Statement of Errors Complained of on Appeal, notwithstanding the trial court's Order Pursuant to Pa. R.A.P. 1925(b). (*See* R.R. at 128a-130a.) Regardless, we need not reach this issue given the manner in which we resolve this appeal.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Garfield Gayle t/d/b/a : 
Gar's Automotive O.I.S. #EF48 : 
 : 
 : 
v. : No. 1740 C.D. 2016
 : 
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Motor Vehicles, : 
Appellant : 

# **O R D E R**

AND NOW, this 1st day of November, 2017, it is hereby ordered that the order of the Court of Common Pleas of Delaware County filed on October 6, 2016, is affirmed.

_____
DAN PELLEGRINI, Senior Judge